Filed 6/30/14  In re N.J. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.J., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E060299 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ100227) |
| v. | OPINION |
| R.J., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jacqueline C. Jackson, Judge.  Reversed in part with directions.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

R.J. (father) appeals an order terminating his parental rights to his daughter, N. The only issue he raises is whether the juvenile court correctly found that the Riverside County Department of Public Social Services (DPSS) complied with the notice requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We agree that DPSS did not comply with those requirements. Consequently, we will reverse the termination order and remand to allow DPSS to comply with ICWA's notice requirements.

FACTUAL AND PROCEDURAL HISTORY

Because ICWA compliance is the sole issue on appeal, an abbreviated history will suffice. N. became a court dependent pursuant to Welfare and Institutions Code section 300 shortly after her birth because she was born with methamphetamine in her system. Reunification services were ordered for father, who was deemed N.'s presumed father, but not for mother, based on her failure to reunify with her older children in prior dependency cases. (Father is not the father of those children.)

Father made some effort at reunification with N., but ultimately was unable to care for her, in part because during the reunification period he was sentenced to four years in prison, apparently for a theft offense, and was incarcerated at Delano State Prison. His parental rights were terminated and N. was freed for adoption on December 19, 2013. Father filed a timely notice of appeal.

<u>LEGAL ANALYSIS</u>

THE RECORD SHOWS THAT DPSS DID NOT COMPLY WITH

ICWA NOTICE REQUIREMENTS

Father contends that DPSS failed to provide adequate information concerning his possible Cherokee heritage to permit federally recognized Cherokee tribes to determine whether N. qualified for tribal membership. He asserts that the court erred when it found that DPSS had complied with ICWA's notice requirements. We agree.

ICWA was enacted "'to respond to a crisis in which large numbers of Indian children were being removed from their families for placement in non-Indian homes. [Citation.] ICWA was designed to protect the best interests of Indian children and promote the stability and security of Indian tribes and families by establishing minimum federal standards for the removal of Indian children from their families by state courts and the placement of such children in foster or adoptive homes. [Citation.] [¶] At the heart of ICWA are its jurisdictional provisions over child custody proceedings involving Indian children domiciled both on and off the reservation.'" (*In re Christian P.* (2012) 208 Cal.App.4th 437, 450-451, fn. omitted.)

"'Among ICWA's procedural safeguards is the duty to inquire into a dependent child's Indian heritage and to provide notice of the proceeding to any tribe or potential tribes, the parent, any Indian custodian of the child and, under some circumstances, to the Bureau of Indian Affairs.' [Citation.] To comply with these notice requirements, [the

3

social services agency is] required to (1) identify any possible tribal affiliations and send notice to those tribes; and (2) submit copies of such notices, including return receipts, and any correspondence received from the tribes to the trial court.'" (*In re Christian P.*, *supra*, 208 Cal.App.4th at p. 451.)

"'The [trial] court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation.] We review the trial court's findings for substantial evidence.'" (*In re Christian P.*, *supra*, 208 Cal.App.4th at p. 451.)

Here, mother reported that she had Cherokee and Wintun ancestry. Father stated that his paternal grandmother was "full Apache." Father did not have more information than that, and his grandmother had died when his father was 13. Neither father nor his father was registered with a tribe or had any tribal affiliation. Father later reported to the social worker that his paternal aunt informed him that the family does not have any American Indian ancestry and that his paternal grandmother was part of a tribe in Mexico. The social worker nevertheless asked for the grandmother's name and date of birth. However, father did not provide that information.

At a hearing on August 8, 2012, father stated that he had some Cherokee ancestry through his mother. However, he had "no number" and could not "trace it back." The court asked if DPSS had noticed the Cherokee tribes for both mother and father. The social worker replied, "It's been reported to the ICWA." The court accepted that

4

statement as evidence that notice had been provided to the Cherokee tribes with respect to both parents.  At a subsequent hearing, the court found, based on documents filed by DPSS on September 4, 2012, that N. was not an Indian child within the meaning of ICWA and that "ICWA notice [was] good."[1]

The ICWA notices prepared by DPSS state that mother claimed Cherokee ancestry, as well as Wintun and Blackfeet, and that father claimed Apache ancestry. Father contends that this was inadequate because the notices did not state that he claimed Cherokee ancestry.  DPSS argues that the notices were sufficient because "[t]here are three Cherokee tribes, all of which received notice," and all of which "responded indicating that [N.] was not an Indian Child in connection to their tribes," based on the information that was provided.  This information included all of the "relevant information that was known about [father] and his relatives."  And, the response of one of the Cherokee tribes appears to indicate that it considered father's information as well as mother's in determining that N. is not an Indian child.  Accordingly, DPSS contends, substantial evidence supports the trial court's finding that proper notice was given and that N. is not an Indian child.

---

[1] To be an Indian child within the meaning of ICWA, a child must be either (1) a member of an Indian tribe, or (2) both eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe.  (25 U.S.C. § 1903(4).)

We disagree. None of the responses from the Cherokee tribes indicated specifically that they relied on the information provided with respect to both parents in determining N.'s status. On the contrary, they refer in general terms to the "information provided" or "information . . . supplied" or "information received." The information provided in the notices was that father claimed Apache ancestry, not that he claimed Cherokee ancestry. Accordingly, the Cherokee tribes were not put on notice that N. might be an Indian child by virtue of her father's Cherokee ancestry, and the juvenile court erred in finding "good" notice pursuant to ICWA.[2]

A notice violation under ICWA is reversible error only if the appellant shows a reasonable probability that he or she would have obtained a more favorable result in the absence of the error. (*In re Christian P.*, *supra*, 208 Cal.App.4th at p. 452.) In the absence of such a showing, the remedy is conditional reversal of the order terminating parental rights and limited remand to allow the social services agency to comply with ICWA. (*In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 908.) Father has not pointed to any facts that support the conclusion that he would have obtained a more favorable result if proper notice had been given to the Cherokee tribes. Accordingly, we will remand for compliance by DPSS.

---

[2] None of the other tribes noticed responded that N. was a member or entitled to membership.

## DISPOSITION

The order terminating parental rights is conditionally reversed, and the cause is remanded to the juvenile court with directions to order DPSS to provide the Cherokee tribes with proper notice of the proceedings and of father's claim of Cherokee ancestry. If no response is received indicating that N. is an Indian child within the meaning of ICWA, then the juvenile court shall reinstate the order terminating parental rights. If any Cherokee tribe determines that N. is an Indian child within the meaning of ICWA, the juvenile court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


RICHLI
             J.


CODRINGTON
             J.